NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

PAUL B., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, D.D., *Appellees.*

No. 1 CA-JV 21-0154
FILED 9-21-2021

Appeal from the Superior Court in Maricopa County
No.  JD 531570
The Honorable Jeffrey A. Rueter, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee, Department of Child Safety*

_____

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Brian Y. Furuya joined.

_____

**B R O W N**, Judge:

¶1        Paul B. ("Father") appeals the juvenile court's order terminating his parental rights to his son D.D., born in January 2018. Because reasonable evidence supports the order, we affirm.

## BACKGROUND

¶2        Father and Isabella D. ("Mother") are D.D.'s biological parents. Mother's parental rights were also terminated, but she is not a party on appeal.

¶3        In March 2018, the Department of Child Safety ("DCS") removed D.D. from Mother's care due in part to her uncontrolled seizures that required constant supervision. DCS petitioned for dependency, alleging Father had not established paternity, did not have an order granting him custody, and was unable to provide D.D. with basic needs, including stable housing. Father told DCS he did not want to become involved in the case until he was sure D.D. was his child. During the first few months after D.D.'s removal, Father lived in a tent-like structure in his parent's backyard with his fiancée while Mother and D.D. lived inside of the house.

¶4        When Father's paternity was established in May 2018, DCS had concerns about Father's living situation, unemployment, and his lack of a relationship with D.D. Following mediation, Father agreed to participate in services, including a "rule-out UA," parent aide, and supervised visits. He started parent-aide services in June 2018. At the intake, Father advised the parent aide "that he didn't have any type of parental relationship" with D.D.

¶5        After Father pled no contest at the September 2018 dependency hearing, the juvenile court found that D.D. was dependent as to both parents. The court approved the case plan of family reunification and "services as outlined."

**¶6**         Although Father achieved some success with the parent-aide service, it was closed out unsuccessfully in December 2018 due to "reported concerns over [F]ather's ability to parent" and whether "reunification was an appropriate case plan." As a result, DCS conducted a psychological consultation, which led to a psychological evaluation in March 2019. Based on the evaluation, DCS asked Father to self-refer for counseling because it understood he had "AHCCCS insurance and would be able to refer through his insurance provider." According to DCS, however, Father did not want to participate in counseling.

**¶7**         In June 2019, Father started a new job working as a truck driver, which required working long hours each day and sleeping a certain number of hours each night. DCS attempted to meet Father's work schedule and set visitation for Father's day off. At Father's request, DCS scheduled one four-hour visit per week. Despite efforts to be flexible to Father's schedule, Father missed a significant number of visits with D.D.

**¶8**         At a report and review hearing in October 2019, D.D.'s guardian ad litem moved to change the case plan to severance and adoption, noting D.D. "has been in care for far too long without sufficient progress for his reunification." Over Father's objection, the juvenile court granted the motion.

**¶9**         Several weeks later, a second parent aide was offered to Father, but Father participated in only four of eight visits and three of nine skills sessions. The service was closed at the end of January 2020 based on Father's lack of engagement. Due to concerns that Father had an argument with his fiancée during a visit, and his lack of participation in services, DCS referred Father for a second psychological evaluation, which Dr. Levitan conducted in May 2020. Dr. Levitan recommended that DCS provide "[F]ather with parenting aide services and psychoeducational intervention (e.g., skill session) to improve his parenting skills and abilities."

**¶10**         In November 2019, DCS moved for termination of Father's parental rights based on 15 months in an out-of-home placement. A.R.S. § 8-533(B)(8)(c). DCS alleged that Father failed to maintain consistent housing, his employment as a truck driver resulted in his inability to participate in regular contact with D.D., and he was unsuccessful in participating in parent-aide services. Around the same time, Father moved for change in physical custody, requesting that D.D. be placed with paternal grandmother. The juvenile court denied the motion after an evidentiary hearing. Father later moved unsuccessfully for a change in physical custody to place the child with paternal grandmother and her husband.

**¶11**         The juvenile court held a two-day contested termination hearing in April 2021 and heard testimony from various witnesses including two DCS case workers, a psychologist, the paternal grandmother, Father, and his fiancée.  The court granted the motion for termination, finding that DCS met its burden of proof on the out-of-home placement ground and that termination was in D.D.'s best interests.  Father timely appealed, and we have jurisdiction pursuant to A.R.S. § 8-235(A).

## DISCUSSION

**¶12**         To terminate parental rights, a court must find (1) by clear and convincing evidence that at least one statutory ground in A.R.S. § 8–533 has been proven, and (2) by a preponderance of the evidence that termination is in the child's best interests. *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286, ¶ 15 (App. 2016).  We will affirm an order terminating parental rights so long as reasonable evidence supports the order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).  "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶13**         To sustain its burden here, DCS was required to prove that (1) D.D. was in an out-of-home placement for a cumulative period of 15 months or longer, (2) Father has not remedied the circumstances requiring the out-of-home placement, and (3) a substantial likelihood exists that Father "will not be capable of exercising proper and effective parental care and control in the near future."  A.R.S. § 8-533(B)(8)(c).  DCS was also required to show it made reasonable efforts to reunify the family.  A.R.S. § 8-533(B)(8).

### A.     Reunification Services

**¶14**         DCS must provide services and give the parent an opportunity to engage in the services, *Mary Ellen C. v. Ariz. Dept. of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 37 (App. 1999), but it is not required to wait an indefinite period before requesting termination of parental rights, *Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994).  Nor is DCS required to provide services that would be futile or ensure parents participate in the services offered; however, DCS must at least provide "the parent[s] 'with the time and opportunity to participate in programs designed to help [them] to become an effective parent.'" *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235, ¶¶ 14–15 (App. 2011) (citation

omitted). We will accept the court's findings of fact unless no reasonable evidence supports them. *Id.* at 234, ¶ 13.

**¶15** Father challenges the juvenile court's finding that DCS made reasonable efforts to reunify the family. He argues DCS failed to offer the services recommended by Dr. Levitan, *supra* ¶ 9. He also contends DCS should have offered him a third parent-aide referral or a separate "psychoeducational intervention." But Father does not challenge the juvenile court's finding that he did not contest "the adequacy of the services provided or offered" by DCS. Thus, Father has waived these arguments on appeal. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 175, ¶ 1 (App. 2014). In any event, the record supports the court's finding.

**¶16** Dr. Levitan explained that psychoeducational means learning with evidence-based approaches, such as skill sessions with a parent aide where the person receives knowledge and insights into parenting. Thus, although not his area of expertise, he believed that Father would benefit from parenting-aide skills. Father, however, failed to take advantage of the parenting-aide opportunities he was provided. Because he had unsuccessfully closed out of the two earlier referrals, DCS required him to attend eight consecutive supervised visits with D.D. before it would make a third parent-aide referral. Father never completed that requirement. Accordingly, the record supports the court's finding that DCS made reasonable efforts to provide reunification services.

### B. Out-of-Home Placement

**¶17** The juvenile court found that Father did not consistently engage in the services designed to remedy the circumstances that caused D.D. to be in out-of-home placement, primarily visitation and parent aide. The court explained that Father often canceled visits at the last moment, arrived late, or ended the visits early. After Father moved to a different county, even though the visits were provided at a park near his residence, it did not improve Father's participation. The court also noted that Father attributed his difficulties in completing the parent-aide service and participating consistently to his work schedule and being too tired on his days off, but he testified that "[he] just want[s] to relax." Given Father's lack of consistent engagement in services, the court found that Father failed to appreciate "the day to day, hour to hour, and minute to minute requirements of parenting and nurturing a young child."

**¶18** Additionally, the court found a substantial likelihood that Father would not be capable of parenting in the near future. The court

stated that "Father has made no progress in completing the services necessary to reunify with his child," noting that Father had been unable to show any change in circumstances indicating progress could be made. The court added that even though Father's work schedule had recently become more conducive to visits, his participation decreased.

¶19 Father argues the evidence does not support the court's findings that (1) he was unable to remedy the circumstances requiring out-of-home placement, and (2) he would be incapable of exercising proper and effective parental care in the near future. Father disputes that he made "no progress," noting that he promptly established paternity, secured stable housing, obtained employment, engaged in the initial parent-aide services, was bonded to D.D. and successfully parented his second child with his fiancée. Father is essentially asking us to reweigh the evidence, which we cannot do. *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018).

¶20 Although Father participated in many visits over the course of three years and made some progress during the first parent-aide service, the court did not err in concluding that he failed to make progress in *completing* the necessary reunification services. The record shows that at the time of the termination hearing DCS remained concerned about "his lack of consistency and overall unwillingness to step up and parent [D.D.]." Father had three years to participate in services offered, but he failed to demonstrate he had made the necessary changes to allow him to provide for D.D.'s needs as a parent. For example, DCS had multiple concerns about Father's participation in the supervised visitation, including lack of consistency, his display of frustration, and his overall failure to meet D.D.'s needs during the visits. The record also confirms that Father was unable to achieve the eight-consecutive visit requirement that would have allowed him to have a third parent-aide referral. And in the three months leading up to the termination hearing, Father participated in only one visit. We therefore conclude that reasonable evidence supports the court's finding that DCS met its burden of proving the out-of-home placement ground.

### C.     Best Interests

¶21 "Termination is in the child's best interests if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S.*, 245 Ariz. at 150, ¶ 13. "[W]hen a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely," a court may find termination of parental rights is in the child's best interests. *Id*. at 151, ¶ 14 (quotation and

citation omitted). The court considers the "totality of the circumstances existing at the time of the severance." *Id.* at 150, ¶ 13.

**¶22** The juvenile court found that D.D. will benefit from termination because he needs caregivers who will put his needs first and provide a nurturing environment. The court found that the current placement is providing D.D. "with a loving and nurturing home environment and intends to proceed with adoption." Father does not challenge these findings; instead, he argues the court erred because he could have provided D.D. "a safe, stable, and permanent home."

**¶23** A case manager testified that the current placement is able to provide stability for D.D., meet his special medical needs, and care for him emotionally. She also explained that if for some reason the placement is unable to adopt D.D., another placement could be identified to serve in that role. The record supports the court's best interests determination.

## CONCLUSION

**¶24** We affirm the juvenile court's order terminating Father's rights to D.D.

